IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER SINGH, et al.,

    Plaintiffs,

v.

WASHINGTON MUTUAL BANK, et al.,

    Defendants.
_____/

No. C-09-2771 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

    Before the Court is defendant JP Morgan Chase Bank, N.A.'s ("JP Morgan") motion, filed June 29, 2009, to dismiss plaintiffs' First Amended Complaint ("FAC").[1] Plaintiffs have filed opposition, to which JP Morgan has replied.[2] Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for decision thereon, hereby VACATES the hearing scheduled for August 21, 2009, and rules as follows.

## BACKGROUND

    The following facts are taken from plaintiffs' FAC.

    In November 2005, plaintiffs received a solicitation for a home loan from Alex Junco ("Junco"), a loan consultant with Washington Mutual Home Loans, a subsidiary of

---

[1] Although plaintiffs' First Amended Complaint also names Washington Mutual Bank as a defendant to the instant action, JP Morgan asserts that JP Morgan "is the only named defendant," as it "is an acquirer of certain assets and liabilities of Washington Mutual, including the loan identified in the FAC." (See Notice of Removal ¶ 5.)

[2] Concurrently with the instant motion, JP Morgan filed a Request for Judicial Notice of two deeds of trust. As such documents are not relevant to the Court's analysis, the Court does not address the request herein.

1 Washington Mutual Bank.  (See FAC ¶¶ 4, 11 & Ex. A.)  The solicitation "gave the
2 impression" that plaintiffs would be able to obtain a fixed-rate, five-year loan.  (See id. ¶
3 12.)  Thereafter, plaintiffs contacted Junco, who "steered plaintiffs towards a payment
4 option adjustable rate mortgage."  (See id. ¶ 13.)  Junco "intentionally withheld information
5 from plaintiffs regarding the dramatic interest rate change at the end of the introductory
6 period [of the loan]."  (See id. ¶ 15.)  On April 7, 2006, plaintiffs submitted a loan application
7 to defendants, and after "multiple . . . offers[ ] and counteroffers," the loan transaction "was
8 finally closed."  (See id. ¶¶ 18, 21.)  In their closing documents, plaintiffs received only a
9 single copy of a "Notice of Right to Cancel," which notice did not include the date of the
10 transaction.  (See id. ¶ 22.)

11 After the above-referenced introductory period, the interest rate on the loan
12 increased, and because plaintiffs could not afford the full amount of the "interest only"
13 payments, the loan experienced negative amortization.  (See id. ¶ 24.)  When the principal
14 balance on the loan reached a cap of 110% of the original loan amount, however, plaintiffs
15 "were forced" to start making such interest only payments.  (See id. ¶ 27.)

16 On February 13, 2009, plaintiffs' counsel informed defendants that plaintiffs were
17 represented by an attorney and that all communications regarding the debt at issue should
18 be conducted through said attorney.  (See id. ¶ 29-30.)  Defendants, however, "ignored this
19 demand and have repeatedly harassed and annoyed plaintiffs through telephone calls
20 attempting to collect the debt."  (See id. ¶ 31.)  On February 18, 2009, plaintiffs sent
21 defendants a "qualified written request" ("QWR"), pursuant to the Real Estate Settlement
22 Practices Act ("RESPA"), 12 U.S.C. § 2605, "asking for an itemization of the loan payments
23 and copies of signed closing documents."  (See id. ¶ 32.)  Defendants, however, failed to
24 respond to this request or to acknowledge receipt thereof.  (See id. ¶ 35.)  Additionally,
25 although plaintiffs sent defendants "Notices of Rescission," pursuant to the Truth in Lending
26 Act, 15 U.S.C. § 1635, defendants failed to take action "to reflect the termination of their
27 security interest in the property."  (See id. ¶¶ 36-37.)
28 //

2

On May 14, 2009, plaintiffs filed a First Amended Complaint in state court, alleging federal claims under TILA and RESPA, as well as state law claims under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788.14, the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, along with a common law claim for fraud.[3]  On June 22, 2009, JP Morgan removed the action to district court.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a)(2).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).  In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint.  See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that are subject to judicial notice.  See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

---

[3]The date on which the action was originally filed is not reflected in the record.

3

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). A court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Twombly, 127 S. Ct. at 1965 (internal quotation and citation omitted).

## DISCUSSION

**A.    First Cause of Action ("Rescission")**

JP Morgan, relying on Yamamoto v. Bank of N.Y., 329 F.3d 1167 (9th Cir. 2003), contends plaintiffs' claim for rescission, which claim is brought under TILA, is subject to dismissal, for the reason that plaintiffs' right to rescind has not yet been adjudicated in plaintiffs' favor or, alternatively, for the reason that plaintiffs have failed to allege they have the ability to repay the funds they received under the loan. As set forth below, JP Morgan's argument is unavailing.

The procedure governing rescission of a loan transaction under TILA is set forth in 15 U.S.C. § 1635(b), which provides, in relevant part:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

See § 1635(b). In Yamamoto, the Ninth Circuit noted that a district court may alter the above-described procedures and that the court has "discretion to condition rescission on tender by the borrower of the property he had received from the lender." See Yamamoto,

4

1  329 F.3d at 1171 (internal quotation and citation omitted). Whether rescission should be so
2  conditioned "depends upon the equities present in a particular case, as well as
3  consideration of the legislative policy of full disclosure that underlies the Truth in Lending
4  Act and the remedial-penal nature of the private enforcement provisions of the Act." See
5  id. (internal quotation and citation omitted). In addition, where, as here, the defendant
6  contests the alleged rescission, such rescission does not actually occur until "the right to
7  rescind is determined in the borrower's favor." See id. at 1172.

8  Notably, Yamamoto does not hold that a claim for rescission cannot survive a motion
9  to dismiss until the right to rescind is adjudicated in the plaintiff's favor. Indeed, as plaintiffs
10 point out, such a holding would essentially preclude all claims for rescission under TILA; no
11 plaintiff could seek adjudication of his alleged right to rescind because any such claim
12 would be subject to dismissal for the reason that such claim had not yet been adjudicated
13 in the plaintiff's favor.

14 Nor did Yamamoto hold that a claim for rescission must, in all instances, be
15 conditioned on a tender offer by the plaintiff. Rather, the Ninth Circuit held that a district
16 court has discretion to condition rescission on such an offer. See Yamamoto, 329 F.3d at
17 1171. Here, JP Morgan offers no evidence to support the Court's exercise of such
18 discretion, whether at this or any other stage of the proceedings. Rather, relying on certain
19 district court cases, JP Morgan argues that plaintiffs have failed to offer "any indication that
20 it would be inequitable" to require plaintiffs to make a tender offer, and, consequently, they
21 should be required to do so. (See Reply at 3:4-11); see, e.g., Martinez v. EMC Mortgage
22 Corp., No. CV F 09-0813 LJO GSA, 2009 WL 2043013, at *6 (E.D. Cal. July 13, 2009)
23 (dismissing claim for rescission where there was no "sufficiently alleged notice of
24 rescission" and no "tender of loan proceeds"); Mangindin v. Wash. Mutual Bank, No. C 09-
25 01268 JW, 2009 WL 1766601, at *3 (N.D. Cal. June 18, 2009) (dismissing claim for
26 rescission where plaintiffs failed to allege "that they attempted to tender, or are capable of
27 tendering, the value of the property" or "that such equitable circumstances exist that
28 conditioning rescission on any tender would be inappropriate").

Numerous district courts, however, have rejected the argument advanced by JP Morgan herein. See, e.g., ING Bank v. Ahn, No. C 09-995 TEH, 2009 WL 2083965, at *2 (N.D. Cal. July 13, 2009) (noting "Yamamoto did not hold that a district court must, as a matter of law, dismiss a case if the ability to tender is not pleaded"); Pelayo v. Home Capital Funding, No. 08-CV-2030 IEG (POR), 2009 WL 1459419, at *7 (S.D. Cal. May 22, 2009) (rejecting argument that, under Yamamoto, claim for rescission was subject to dismissal where plaintiff "failed to offer tender in the complaint of the funds she borrowed"); Harrington v. Home Capital Funding, Inc., No. 08cv1579 BTM (RBB), 2009 WL 514254, at *3 (S.D. Cal. Mar. 2, 2009) (holding "[t]ender by the borrower is not always a precondition to rescission and does not have to be pled to state a claim for rescission"); Burrows v. Orchid Island TRS, LLC, No. 07CV1567-BEN (WMC), 2008 WL 744735, at *6 (C.D. Cal. Mar. 18, 2008) (rejecting, on motion to dismiss, defendant's argument that "there [was] no evidence" that plaintiff could return loan proceeds; noting plaintiff could "try to sell or refinance the property with another lender, should it become necessary to return [the] loan proceeds"). This Court finds the reasoning of these cases persuasive and consistent with both the language of § 1635 and the holding in Yamamoto. See § 1635(b) (providing, within 20 days of receipt of notice of rescission, creditor "shall return" money or property paid by obligor, and obligor shall tender property received from creditor "upon performance of [ ] creditor's obligations"); Yamamoto, 329 F.3d at 1173 (noting court "may alter" sequence of procedures set forth in § 1635(b)).

Accordingly, to the extent JP Morgan seeks dismissal of plaintiffs' First Cause of Action, JP Morgan's motion will be denied.

**B.    Second Cause of Action ("Violations of TILA")**

Plaintiffs' Second Cause of Action seeks statutory damages, attorney's fees, and costs for alleged violations of TILA. JP Morgan first argues that, to the extent such claim is based on JP Morgan's alleged failure to comply with plaintiffs' Notices of Rescission, the claim is subject to dismissal, for the reason that plaintiffs' right to rescind has not yet been adjudicated in plaintiffs' favor. As discussed above, the Court has rejected this argument in

6

connection with plaintiffs' claim for rescission, and JP Morgan has offered no reason why such argument would apply with greater force to plaintiffs' claim for damages. See, e.g., Belini v. Washington Mutual Bank, FA, 412 F.3d 17, 27-28 (1st Cir. 2005) (finding, where claim for rescission not yet adjudicated, plaintiffs stated claim for damages under TILA based on creditor's alleged failure to comply with notice of rescission); Gibbons v. Interbank Funding Group, 208 F.R.D. 278, 284 (N.D. Cal. 2002) (same).[4]

JP Morgan further argues that, to the extent plaintiffs' Second Cause of Action is based on alleged disclosure violations that occurred at the time of the loan's origination, such claim is barred by the one-year statute of limitations set forth in 15 U.S.C. § 1640(e). See 28 U.S.C. § 1640(e); see also 28 U.S.C. § 1640(a) (providing cause of action for actual and statutory damages for violations of TILA).  Plaintiffs do not dispute that the instant action was filed more than one year after the accrual of any such claims; plaintiffs argue, however, that because they have stated a valid claim for rescission under § 1635, the statute of limitations for all of their TILA claims is three years.  In support of their argument, plaintiffs rely on 15 U.S.C. § 1635(g), which provides: "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind."  See 15 U.S.C. § 1635(g); see also § 1635(f) (providing "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first").

Although the Ninth Circuit has not addressed the issue, numerous district courts have held the relief provided by § 1635(g) is subject to the one-year statute of limitations of § 1640(e).  See, e.g., Brown v. Nationscredit Finan. Servs. Corp., 349 F. Supp. 2d 1134, 1137 (N.D. Ill. 2005) (holding "both the language of § 1635(g) and its legislative history

---

[4]The Court notes that Yamamoto, on which JP Morgan again relies, did not address the question of the availability of statutory damages under TILA.  See Yamamoto, 329 F.3d at 1169 n.1 ("While [plaintiffs'] brief mentions the issue of whether [defendant] was entitled to summary judgment on [plaintiffs'] claim for statutory damages, the issue is not argued and we deem it abandoned.").

7

support the notion that this subsection was not intended to alter the statute of limitations applicable to TILA damage claims"); Rodrigues v. Members Mortgage Co., 323 F. Supp. 2d 202, 210 (D. Mass. 2004) (holding "actions for statutory damages under TILA must be brought within one year from the date of the occurrence of the violation") (internal quotation and citation omitted); Bell v. Ameriquest Mortgage Co., No. 04 C 5987, 2004 WL 2973819, at *1 (N.D. Ill. Nov. 30, 2004) (holding, where plaintiff brought suit "more than 18 months" after asserted TILA violation, "the potential for the awarding of relief under Section 1640 set out in Section 1635(g) has never eventuated").[5]  The Court finds the reasoning of these cases persuasive.  In particular, nothing in the language of § 1635(g) suggests an intent to create a right to damages separate from that provided by § 1640; rather, as the district court in Brown observed, § 1635(g) merely "clarif[ies] that a plaintiff bringing a claim for rescission could also sue for statutory damages" under § 1640.  See Brown, 349 F. Supp. 2d at 1137.

Accordingly, to the extent JP Morgan seeks dismissal of plaintiffs' Second Cause of Action as based on JP Morgan's alleged failure to comply with plaintiffs' Notices of Rescission, JP Morgan's motion will be denied, and to the extent JP Morgan seeks dismissal of plaintiffs' Second Cause of Action as based on alleged disclosure violations at the time of the loan's origination, JP Morgan's motion will be granted.

**C.     Third Cause of Action ("Violations of RESPA")**

JP Morgan argues that plaintiffs' claim for violation of RESPA, which claim is based on JP Morgan's alleged failure to respond to plaintiffs' qualified written request, is subject to dismissal, for the reason that plaintiffs have failed to allege they suffered any actual damages as a result thereof.  See, e.g. Hutchinson v. Del. Sav. Bank, FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (holding plaintiff's "alleging a breach of RESPA duties alone does not state a claim under RESPA"; noting plaintiff must allege "that the breach resulted

---

[5] But see McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003) (holding, if plaintiffs therein had right to rescind, "the statute of limitations for the damages they seek is three years, not one").

in actual damages"). The Court agrees. In particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that "[a]s a result" of defendants' failure to respond, defendants "are liable for actual damages, costs, and attorney fees." (See FAC ¶ 54); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Indeed, plaintiffs have failed to allege they in fact suffered any such damages.

Accordingly, to the extent JP Morgan seeks dismissal of plaintiffs' Third Cause of Action, JP Morgan's motion will be granted. The Court, however, will afford plaintiffs' an opportunity to file a Second Amended Complaint curing the deficiencies noted in such Cause of Action.

**D.    Fourth Cause of Action ("Violations of Rosenthal Fair Debt Collection Act")**

JP Morgan argues that plaintiffs' claim for violation of the RFDCPA is subject to dismissal, for the reason that plaintiffs' have failed to allege JP Morgan is a "debt collector" within the meaning of the RFDCPA, or alternatively, for the reason that plaintiffs have failed to sufficiently identify the nature of any communications on which such claim is based. See Cal. Civ. Code § 1788.14(c) (prohibiting "debt collector" from "[i]nitiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt"). The Court agrees that plaintiffs have failed to allege JP Morgan is a "debt collector" within the meaning of the RFDCPA. See Cal. Civ. Code § 1788.2(c) (defining "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection"). In particular, plaintiffs' FAC contains no reference to the term "debt collector," nor have plaintiffs alleged any facts suggesting JP Morgan meets the definition of that term as set forth in § 1788.2.[6]

---

[6] In light of such finding, the Court does not address herein JP Morgan's argument that plaintiffs have failed to sufficiently identify the communications they assert violated the RFDCPA.

9

Accordingly, to the extent JP Morgan seeks dismissal of plaintiffs' Fourth Cause of Action, JP Morgan's motion will be granted. The Court, however, will afford plaintiffs an opportunity to file a Second Amended Complaint curing the deficiencies noted in such Cause of Action.

**E.     Fifth Cause of Action ("Fraud")**

JP Morgan argues that plaintiffs' claim for fraud is subject to dismissal on the ground that such claim is "related to the origination of the [l]oan," and that JP Morgan was not a participant therein. (See Mot. at 11:6-8.) As plaintiffs point out, however, JP Morgan has conceded that it acquired "certain assets and liabilities of Washington Mutual [Bank], including the loan identified in the FAC." (See Notice of Removal ¶ 5.) JP Morgan cites to no authority suggesting that, under such circumstances, it may not be held liable for misrepresentations made by Washington Mutual Bank or its agents in connection with such loan.

JP Morgan further argues that plaintiffs' claim for fraud is subject to dismissal on the ground that plaintiffs have failed to plead such claim with the particularity required by Rule 9 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P 9(b) (providing "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding, under Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged"; noting plaintiff "must set forth what is false or misleading about a statement, and why it is false") (internal quotation and citation omitted). The Court agrees. In particular, although plaintiffs allege the solicitation they received from Junco "gave the impression" that plaintiffs would be able to obtain a fixed-rate, five-year loan (see FAC ¶ 12), plaintiffs have failed to identify any specific language in said solicitation that they assert was misleading. Moreover, to the extent plaintiffs' claim is based on any alleged misrepresentation not contained in the above-referenced solicitation, plaintiffs have failed to identify any such misrepresentation or to allege why the same was

false or misleading.[7]

Accordingly, to the extent JP Morgan seeks dismissal of plaintiffs' Fifth Cause of Action, JP Morgan's motion will be granted. The Court, however, will afford plaintiffs an opportunity to file a Second Amended Complaint curing the deficiencies noted in such Cause of Action.

**F.   Sixth Cause of Action ("Untrue or Misleading Statements")**

Plaintiffs' Sixth Cause of Action is brought under the FAL. Plaintiffs' opposition makes clear that such claim is based on the allegedly fraudulent solicitation plaintiffs received from Junco. (See Opp'n at 9:12-18 (asserting "[d]efendants mailed plaintiffs a misleading advertisement that plaintiffs relied on to their detriment"; citing FAC Ex. A).) Consequently, the claim is subject to Rule 9(b). See Vess, 317 F.3d at 1103-04 (holding, where fraud is not necessary element of claim but plaintiff "rel[ies] entirely" on allegations of fraudulent conduct as basis thereof, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"). Moreover, no party makes any argument in connection with plaintiffs' Sixth Cause of Action that has not been discussed in connection with plaintiffs' Fifth Cause of Action.

Accordingly, to the extent JP Morgan seeks dismissal of plaintiffs' Sixth Cause of Action, JP Morgan's motion will be granted. The Court, however, will afford plaintiffs an opportunity to file a Second Amended Complaint curing the deficiencies noted in such Cause of Action.

**G.   Seventh Cause of Action ("Unfair Competition")**

JP Morgan first argues that plaintiffs' claim of unfair competition, which claim is brought pursuant to the UCL, is subject to dismissal for lack of standing. See Cal. Bus. & Prof. Code § 17204 (providing action under UCL may be brought by "a person who has

---

[7] In light of such finding, the Court does not address herein JP Morgan's argument that plaintiffs have failed to sufficiently allege the "detriment" caused by any alleged misrepresentation. (See Mot. at 11:9-10.)

11

suffered injury in fact and has lost money or property as a result of the unfair competition"). Plaintiffs have alleged, however, that they made interest payments on the loan at issue (see FAC ¶¶ 24, 27), and JP Morgan cites to no authority suggesting such payments do not constitute a loss of "money or property," see § 17204, for purposes of standing under the UCL.

JP Morgan further argues that plaintiffs' claim under the UCL is subject to dismissal on the ground plaintiffs have failed to sufficiently allege an "unfair" or "unlawful" business practice. See Cal. Bus. & Prof. Code § 17200 (providing "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice"). In response, plaintiffs assert that they have "presented facts sufficient to establish claims for fraud and violations of § 17500" (see Opp'n at 10:9-10), and, consequently, that they have stated a claim under the UCL, see Berryman v. Merit Prop. Mgmt., 152 Cal. App. 4th 1544, 1554 (2007) (noting "[u]nder its 'unlawful' prong, 'the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL'") (quoting Lazar v. Hertz Corp., 69 Cal. App. 4th 1494, 1505 (1999)) (second alteration in Berryman). The Court, however, has found plaintiffs' fraud and FAL claims are subject to dismissal. Consequently, plaintiffs' UCL claim likewise is subject to dismissal.

Accordingly, to the extent JP Morgan seeks dismissal of plaintiffs' Seventh Cause of Action, JP Morgan's motion will be granted. The Court, however, will afford plaintiffs an opportunity to file a Second Amended Complaint curing the deficiencies noted in such Cause of Action.

**CONCLUSION**

For the reasons stated above, JP Morgan's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows.

1. To the extent JP Morgan seeks dismissal of plaintiffs' Second Cause of Action as based on any alleged disclosure violations at the time of the loan's origination, the motion is hereby GRANTED.

2. To the extent JP Morgan seeks dismissal of plaintiffs' Third, Fourth, Fifth, Sixth,

and Seventh Causes of Action, the motion is hereby GRANTED.

      3.  In all other respects, the motion is hereby DENIED.

      4.  To the extent plaintiffs may be able to cure the deficiencies noted in their Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, plaintiffs may file, no later than September 18, 2009, a Second Amended Complaint.

**IT IS SO ORDERED.**

Dated:  August 19, 2009

                                    MAXINE M. CHESNEY
                                    United States District Judge